## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JARED MAIRS,** individually and on behalf of all others similarly situated, | Case No. : |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **ALLSUP, LLC,** an Illinois limited liability company, **and ALLSUP EMPLOYMENT SERVICES, LLC** an Illinois limited liability company | |
| *Defendants.* | |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jared Mairs ("Mairs" or "Plaintiff Mairs") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Allsup, LLC ("Allsup) and Allsup Employment Services, LLC ("Allsup Employment") to stop their practice of making unsolicited cold calls using an artificial or prerecorded voice to the cellular telephone numbers of consumers, and obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff Mairs resides in Hurst, Texas.

2.      Defendant Allsup is a limited liability company organized and existing under the laws of Illinois and is a corporation with its principal place of business located in Belleville,

1

Illinois.  Defendant Allsup conducts business throughout this District, the State of Illinois, and the United States.

3.      Defendant Allsup Employment Services, LLC is a wholly owned subsidiary of Defendant Allsup, LLC and has the same address as Defendant Allsup.  Allsup Employment Services, LLC conducts business throughout this District, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants have their headquarters in this District, and because the wrongful conduct giving rise to this case was directed from this District.

## COMMON FACTUAL ALLEGATIONS

### Allsup Employment Services Markets Both Defendants' Services By Calling Consumers on Their Cellular Phone Numbers Using an Artificial or Prerecorded Voice

6.      Defendant Allsup, LLC is a for-profit company that provides services to consumers to apply for social security disability insurance benefits ("SSDI") to the Social Security Administration.

7.      Allsup, LLC monetizes this business by keeping 25% of the retroactive SSDI benefits they help the consumer receive, up to $6,000 per consumer.

8.      In 2017 Defendant Allsup created a d/b/a True Help and TrueHelp.com where individuals can take a free assessment to determine whether they qualify for SSDI benefits.

2

9.      In addition, Allsup created a subsidiary called Allsup Employment Services, LLC where they provide employment services through the Social Security Administration's Ticket to Work program, where Allsup is paid by the Social Security Administration as consumers who sign up with Allsup Employment Services transition into the workforce.

10.     As part of Defendants' marketing efforts, Allsup Employment Services places artificial or pre-recorded voice calls to consumers who may qualify for their services.

11.     The text of their artificial or pre-recorded voice call is:

"Hello. This call is from Allsup Employment Services. Social Security has asked us to contact you because you're eligible for the Ticket to Work Program. Allsup Employment Services is a Social Security approved employment network. And we can help you attempt to return to work at absolutely no cost to you. When you sign up for the Ticket to Work Program, with Allsup Employment Services, we can help you at any point in your recovery process. There is no risk to you for trying. And the best part is, your SSDI benefits are fully protected. Your Ticket to Work means you can earn unlimited income while still receiving your monthly SSDI benefits. You also get to keep your Medicare coverage, plus you never have to receive a medical continuing disability review. With our employment guidance, you can begin to explore your work options, and take advantage of the valuable incentives. We'd like to talk with you whether you're able to work right now, not quite ready to try again, or even if you've already  returned to work on your own. Please call us at 888-879-1450. Or send an email to info@alssupes.com. Again, that number is 888-879-1450. Or send an email to infor@alssupes.com. You can also find more information on our website at www.allsupreturntowork.com. If you don't want to receive future calls from Allsup Employment Services, regarding the Ticket to Work Program, please call 888-937-4047. Thank you."

12.     Allsup Employment Services, LLC is calling on behalf of themselves as part of their contract with Social Security.

13.     Allsup Employment Services, LLC does not have any authorization from Social Security to make pre-recorded calls to individuals that Allsup Employment Services has not otherwise obtained prior express consent to call.

14.     Allsup, LLC is intended to directly benefit from the calls of Allsup Employment Services, LLC since as part of Allsup Employment Services business process they will determine

whether True Help a d/b/a of Allsup, LLC can obtain benefits for the individual in return for their 25% fee.

15.    In essence, Allsup Employment Service funnels clients into Allsup LLC.

16.    On Allsup Employment Service's website they list their business process as part of fulfilling the Ticket to Work program. In Allsup Employment Services own words "Ticket to Work in 7 Steps."  The first step is to "Get yourself approved for SSDI. If you're not on SSDI, get help with your application or appeals from the experts at True Help. Take their free assessment to get started."  From the beginning of the process already, Allsup Employment Services is funneling individuals to Allsup, LLC's d/b/a True Help where Allsup, LLC can monetize these consumers by taking 25% of their retroactive SSDI benefits.



17.    Allsup Employment Services, LLC is directly cross-marketing its services to generate business for its parent company as part of its Ticket to Work in 7 Steps program.

---

[1] https://www.allsupemploymentservices.com/how-it-works/

18.     On True Help's website, they clearly state that "How Our Fees Work...What we charge you, when it's time, is a single fee allowed by law...Currently, this is 25% of the dollar amount of your retroactive SSDI benefits payments, and no more than $6,000."[2]



19.     Although registration into the Ticket to Work program is allegedly free for consumers but paid for by the Social Security Administration, Allsup earns revenue from consumers that need to get registered for SSDI before they can join the Ticket to Work program.

20.     Defendant Allsup cannot avoid liability by outsourcing its telemarketing to it subsidiary Allsup Employment Services. The FCC has warned companies that they cannot avoid liability by outsourcing their telemarketing:

> "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amendable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

---

[2] https://www.truehelp.com/ssdi-benefits/ssdi-benefits-for-individuals/

*In re Join Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC 6574, at ¶37 (2013) ("FCC 2013 Ruling") (citations omitted).*

21.     Defendant Allsup knew or should have known that Allsup Employment Services did not have the prior express consent to call consumers like Plaintiff Mairs.

22.     Consumers have complained online and directly to Allsup about the unwanted telemarketing calls they are receiving.

23.     For example, a consumer posted on Allsup's Better Business Bureau ("BBB") page the following complaint:

> 04/19/2018
>
> I was solicited under the highly unlikely condition that the SSA gave Allsup MY name and private phone number to call and assist/educate me on giving them my "ticket to work." I did this 12 years ago to the I*** ********** ** ********** ***** and am now a Dr of Clinical Psychology. I find it HIGHLY UNLIKELY that the SSA would be redundant and spend tax payor money in seeking a corporate for profit to cold call SSDI recipients. What's their angle that they are cold calling a person in ********** for ANY services, let alone NONE required. I think they are using false pretenses and misrepresenting themselves as agents of SSA. This is very disturbing! The language was very clear, and quite manipulative. I would like them to identify their call as "a survey of interest"; and say HPW they truthfully obtained my phone number. Then I would like a written apology for the presumptive interruption in my day - and for continuing to run their wanton get rich scams at the expense of vulnerable persons with acquired disabilities. Respectfully submitted, ** ****** **********  [3]

24.     There are a multitude of other complaints from consumers specifically referencing Defendants' unsolicited artificial or prerecorded voice solicitation calls:

- "This is an automated female voice saying, "...This is Allsop and you have been chosen by the social security admin to participate in the ticket to work program. You can work unlimited hrs and it won't affect your benefits..." then it gives a number to call and repeats the whole thing a second time. I have been recv'g these calls twice a week since May 7th. Very annoying."[4]

- "I am constantly receiving calls from this company and they leave loooong VM message stating they are from SS Ticket to work program... Is SS Administration

---

[3] https://www.bbb.org/us/il/belleville/profile/disability-insurance/allsup-0734-310001536/complaints
[4] https://800notes.com/Phone.aspx/1-888-879-1450

giving out our personal private numbers?? What other personal information are they providing to companies, lawyers, etc...."[5]

- "They just left a voicemail stating "SS" told them to contact me about "Ticket to work" BUT also said things that seem far fetched (if u get employed thru them, u never have a med review, nor lose benefits etc) I don't trust this at all!! They are BLOCKED!!"[6]

- "I got the same call and said it was to from SSI in regards to tickets to work. However, it was not from SSI after checked their website. I would like to know how they get my number too."[7]

- "Said they represent Social Security back to work program.  I called and it was Allsop Employment Agency.  Not sure how or why they called.  I reported to AT&T and blocked them"[8]

- "I received a voicemail with a recording about ticket to work. They speak about reaching company via a .com address."[9]

-  "There's too many scams going on for a robocall like that to be trusted. In the miniscule chance the company is legitimate, they made a horribly idiotic choice in doing these robocalls."[10]

- "selling something I don't need"[11]

- "Claims to be a part of the Soc. Sec. Ticket to Work Program. The Bot calls once a week & leaves a voice message."[12]

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] https://800notes.com/Phone.aspx/1-888-879-1450/2
[10] https://www.shouldianswer.com/phone-number/8888791450
[11] *Id.*
[12] https://www.numberguru.com/phone/888/879/1450/

## FACTS SPECIFIC TO PLAINTIFF JARED MAIRS

25.     On August 5, 2019 at 4:32 PM, Plaintiff Mairs received an artificial or

prerecorded voice solicitation call, which was left as a voicemail, from Defendant Allsup

Employment Services using phone number 888-879-1450 on his cellular phone number. The

artificial or prerecorded voice on the call states:

> "Hello. This call is from Allsup Employment Services. Social Security has asked us to
> contact you because you're eligible for the Ticket to Work Program. Allsup Employment
> Services is a Social Security approved employment network. And we can help you
> attempt to return to work at absolutely no cost to you. When you sign up for the Ticket
> to Work Program, with Allsup Employment Services, we can help you at any point in your
> recovery process. There is no risk to you for trying. And the best part is, your SSDI
> benefits are fully protected. Your Ticket to Work means you can earn unlimited income
> while still receiving your monthly SSDI benefits. You also get to keep your Medicare
> coverage, plus you never have to receive a medical continuing disability review. With our
> employment guidance, you can begin to explore your work options, and take advantage
> of the valuable incentives. We'd like to talk with you whether you're able to work right
> now, not quite ready to try again, or even if you've already  returned to work on your
> own. Please call us at 888-879-1450. Or send an email to info@alssupes.com. Again, that
> number is 888-879-1450. Or send an email to infor@alssupes.com. You can also find
> more information on our website at www.allsupreturntowork.com. If you don't want to
> receive future calls from Allsup Employment Services, regarding the Ticket to Work
> Program, please call 888-937-4047. Thank you."

26.     The artificial or prerecorded voice call that Mairs received is not applicable to

him in any way.

27.     Plaintiff does not have a relationship with Defendants, or any of their affiliated

companies, and has never requested that Defendants place calls to him.  Simply put, Defendants

did not possess Plaintiff's prior express consent to place a telephone call to him on his cellular

telephone using an artificial or prerecorded voice.

28.     By making unauthorized telephone calls as alleged herein, Defendants have

caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In

addition, the call disturbed Plaintiff's use and enjoyment of his phone, in addition to the wear

and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

29.     In order to redress these injuries, Plaintiff, on behalf of himself and the class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits artificial or prerecorded voice calls to cellular phone numbers.

## CLASS ALLEGATIONS

30.     Plaintiff bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendants (or an agent acting on behalf of Defendants) called (2) using an artificial or prerecorded voice, and (3) for whom Defendants claim (a) they obtained prior express consent in the same manner as Defendants claim they supposedly obtained prior express consent to call Plaintiff, or (b) they did not obtain prior express consent.

31.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipate the need to amend the class definition following appropriate discovery.

9

32.     **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed artificial or prerecorded voice calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

33.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants' conduct constitutes a violation of the TCPA;

(b) whether Defendants systematically made telephone calls to members of the Class without first obtaining prior express consent to make the calls;

(c) whether Defendants placed calls to members of the Class using an artificial or prerecorded voice;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

34.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

35.     **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of

conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Prerecorded No Consent Class)**

36.    Plaintiff Mairs repeats and realleges paragraphs 1 through 35 of this Complaint and incorporates them by reference.

37.    Defendants and/or their agents made unwanted solicitation telephone calls to Plaintiff and the other members of the Prerecorded No Consent Class using an artificial or prerecorded voice.

38.    These artificial or prerecorded voice solicitation calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Prerecorded No Consent Class.

39.    Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Prerecorded No Consent

Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

40.    An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

41.    An award of actual and/or statutory damages and costs;

42.    An order declaring that Defendants' actions, as set out above, violate the TCPA;

43.    An injunction requiring Defendant to cease all unsolicited artificial or prerecorded voice calling activities, and otherwise protecting the interests of the Class; and

44.    Such other and further relief that the Court deems reasonable and just.

## JURY TRIAL DEMAND

Plaintiff request a trial by jury.

Respectfully submitted,

**JARED MAIRS**, individually and on behalf of Class of similarly situated individuals

Dated: October 6, 2019                      /s/ *Stefan Coleman*
                                            Stefan Coleman

                                            Stefan Coleman
                                            (Admitted in the Southern Dist of Illinois)
                                            Law@StefanColeman.com
                                            Law Offices of Stefan Coleman, P.A.
                                            201 S. Biscayne Blvd, 28th Floor
                                            Miami, FL 33131
                                            Telephone: (877) 333-9427
                                            Fax: (888) 498-8946

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Pro hac vice admission to be sought